Lilla Ann NORTON, Constance Cummings, Individually and on behalf of all persons similarly situated, Plaintiffs,

v.

TALLAHASSEE MEMORIAL HOSPITAL, an Autonomous Agency of the City of Tallahassee, Defendant.

Joyce DEAN, Trudy Perkins, and Alice Bryant, Individually and on behalf of all persons similarly situated, Plaintiffs,

v.

TALLAHASSEE MEMORIAL HOSPITAL, an Autonomous Agency of the City of Tallahassee, Defendant.

Trudy PERKINS and Alice Bryant, Individually and on behalf of all persons similarly situated, Plaintiffs,

v.

TALLAHASSEE MEMORIAL HOSPITAL, an Autonomous Agency of the City of Tallahassee, Defendant.

TCA Nos. 76–163, 76–172 and 78–0938.

United States District Court,
N. D. Florida,
Tallahassee Division.

April 22, 1981.

Kent Spriggs, Jerry G. Traynham, Tallahassee, Fla., for plaintiffs.

John D. Buchanan, Jr., Tallahassee, Fla., William F. Kaspers, Atlanta, Ga., for defendant.

## ORDER OF DISQUALIFICATION OF COUNSEL

HIGBY, District Judge.

At the risk of posing a rhetorical question, can an attorney/City Commissioner

continue to represent a class of plaintiffs in a racial discrimination case against a defendant hospital which, under certain circumstances, could be directly controlled by the City Commission and is presently represented by the firm of the City Attorney?

These consolidated Title VII actions were scheduled for hearing on motion for class certification on March 2 and 3, 1981. On February 24, 1981, plaintiffs' lead counsel, Kent Spriggs, had the fortune, or the misfortune, as the case may be, to be elected as a City Commissioner of the City of Tallahassee. He took the oath of that office on February 27, 1981. On February 26, 1981, in light of this development, a brief hearing was held, at which time the court expressed its concern over whether lawyer/City Commissioner Spriggs could continue in his present capacity and role as plaintiffs' lead counsel. The class certification hearing was continued, and the matter of the potential conflict of interest generated by Mr. Spriggs' election was heard on March 3, 1981.

A formal motion seeking Mr. Spriggs' disqualification is now before the court, and the parties have been granted ample opportunity to brief this delicate ethical subject. The defendant's counsel maintains that an actual conflict of interest inheres in City Commissioner/attorney Spriggs' continued representation of the named plaintiffs as lead counsel and that the problem is compounded by the dictates of Rule 23(d), Fed. R.Civ.P., concerning the adequacy of counsel. The plaintiffs' counsel say not only is there no actual conflict of interest, but there's not even an apparent conflict of interest. Both positions are too extreme, as will be more fully discussed.

The following facts appear of record without dispute. Since September 22, 1976, Kent Spriggs has represented Norton and the purported class as lead counsel. Jerry G. Traynham, a capable lawyer specializing in civil rights litigation, has also represented the plaintiff Norton and the purported class since October 8, 1976. All of the complaints of alleged racial discrimination are claimed to have occurred prior to June 30, 1979, when the defendant, Tallahassee Memorial Hospital, was an autonomous agency under the direct control of the City of Tallahassee. On June 30, 1979, the City of Tallahassee leased Tallahassee Memorial Hospital to Tallahassee Memorial Regional Medical Center, Inc. Pertinent portions of the lease are quoted below.[1]

1. *Article X—Defaults*
. . . .
Failure to Operate Facilities Properly: If the Lessor in its sole descretion [sic] determines that the facilities are not being operated properly as a medical center complex and after written notice and a public hearing, the City Commission of the City of Tallahassee, Florida, makes such a finding, then the lease shall terminate and the leased premises and all assets of the Lessee shall revert to the Lessor.
Failure of Lessee to Pay Bonding Issue: If the Lessee should default on the payment of any bonded indebtedness whether that of the City of Tallahassee, Florida or the Lessee, then this lease shall terminate and the leased premises and all assets of the Lessee shall revert to the Lessor, who shall make such payments from the operation of the leased premises or take what actions as are necessary or permitted by law to repay said indebtedness.
(1) Default by Lessor: If Lessor defaults on the performance of any term, covenant, or condition required to be performed by it under this agreement, Lessee may elect to terminate this agreement and giving at least 120 days notice to Lessor of such intention, thereby terminating this agreement on the date designated in such notice, unless Lessor shall have cured such default prior to expiration of the 120 day period.
Upon dissolution of the Lessee's Corporation, all of its assets remaining after payment of all costs and expenses of such dissolution shall be distributed to the Lessor (City of Tallahassee, Florida, a local government for a public purpose) and none of the assets will be distributed to any member, officer or Director of the Lessee.
*Article XI—Inspection by Lessor*
Lessee shall permit Lessor and its agents to enter into and upon the leased premises at all reasonable times for the purpose of inspecting the same . . . .
. . . .
*Article XV—Indemnity of Lessor*
Lessee shall indemnify by defending same and hold harmless the Lessor from any and all claims, causes or actions, including costs and attorney's fees, arising from this lease or the operations of the leased premises . . . .

Tallahassee Memorial Hospital has been represented in this litigation by William F. Kaspers and John D. Buchanan, Jr., of Henry, Buchanan, Mick & English, whose firm has represented the City of Tallahassee since 1972. The firm's senior partner, Bryan Henry, is in fact the City Attorney, and various members of the firm, including John D. Buchanan, Jr., regularly perform legal services for the City of Tallahassee on a continuing basis. The usual attorney-client relationship exists between the City Commission and the Henry firm. As stated by Mr. Spriggs, since February 27, 1981, he is a member of a "collegial" body, which also happens to be Mr. Buchanan's employer. This, of course, means that as one of the five City Commissioners Mr. Spriggs is at liberty at any time to instigate a move to fire the present City Attorney.

As a matter of fact, on June 20, 1979, then "citizen" Spriggs had little difficulty in leveling a charge of conflict of interest against City Attorney Henry in his representation of the City, Tallahassee Memorial Hospital, and Tallahassee Memorial Regional Medical Center, Inc., in the finalization of the lease arrangement. *See,* Defendant's Exhibit 1, transcript of City Commission meeting of June 20, 1979. The plaintiffs have moved to amend their complaint to add Tallahassee Memorial Regional Medical Center, Inc., as a party defendant and, quite justifiably, have declined to abandon any claims that arose during the period when Tallahassee Memorial Hospital was under the direct control of the City of Tallahassee.

The court and counsel are guided by the Code of Professional Responsibility adopted by the American Bar Association on August 12, 1969, to become effective January 1, 1970, as modified and adopted by the Supreme Court of Florida. *See,* Local Rule 5(F). The Code of Professional Responsibility consists of three separate but interrelated parts: Canons, Ethical Considerations, and Disciplinary Rules. The Canons are statements of axiomatic norms expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public, with the legal system, and with the legal profession. The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive. They constitute a body of principles upon which the lawyer can rely for guidance in many specific situations.

Canon 8 admonishes that "a lawyer should assist in improving the legal system." Ethical Consideration 8–8 provides:

Lawyers often serve as legislators or as holders of other public offices. This is highly desirable, as lawyers are uniquely qualified to make significant contributions to the improvement of the legal system. *A lawyer who is a public officer, whether full or part-time, should not engage in activities in which his personal or professional interests are or foreseeably may be in conflict with his official duties.* (Emphasis Supplied.)

Canon 9 warns that "a lawyer should avoid even the appearance of professional impropriety." Ethical Consideration 9–2 states:

Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer. On occasion, ethical conduct of a lawyer may appear to laymen to be unethical. In order to avoid misunderstandings and hence to maintain confidence, a lawyer should fully and

---

The Lessee agrees ... to hold Lessor harmless for any claim or action arising out of or incident thereto as well as from any dispute arising from any present building contract, all pending claims and litigation in which Tallahassee Memorial Hospital or Tallahassee Memorial Regional Medical Center is a party or in any way involved, all past, present, or future obligations of Tallahassee Memorial Hospital, Tallahassee Memorial Regional Medical Center ....

*Article XVI—Examination of Books and Records of Lessee*
The Lessee covenants that the Lessor shall have the right at all reasonable times to enter upon, examine, and inspect the financial books and accounts of the Lessee.
*Article XVII—Additional Paragraphs*
....
The Lessor shall have the right to review the budget of the Lessee.

promptly inform his client of material developments in the matters being handled for the client. While a lawyer should guard against otherwise proper conduct that has a tendency to diminish public confidence in the legal system or in the legal profession, his duty to clients or to the public should never be subordinate merely because the full discharge of his obligation may be misunderstood or may tend to subject him or the legal profession to criticism. *When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession.* (Emphasis Supplied.)

Ethical Consideration 9–2 has been the subject of several recent Fifth Circuit Court of Appeals cases involving the granting or denial of motions for disqualification of counsel. The cases on the subject range from a *per se* rule of disqualification where the attorneys are partners or spouses of named plaintiffs or who are themselves class members in class actions under Rule 23 of the Federal Rules of Civil Procedure (*Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102 (5th Cir. 1978)); to the so-called two-pronged test articulated in *Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir. 1976), as related to Canon 9; to a discussion of the interrelationship of Canons 4 and 9 in *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168 (5th Cir. 1979).

As most recently stated in *Church of Scientology of California v. McLean*, 615 F.2d 691, 693 (5th Cir. 1980):

The rule of disqualification is not mechanically applied in this Circuit. *Brennan's, Inc. v. Brennan's Restaurants, Inc., supra*, 590 F.2d at 173–174. To warrant disqualification under Canon 9 of the Code of Professional Responsibility there must be a showing of a reasonable possibility that some specifically identifiable impropriety occurred and the likelihood of public suspicion must be weighed against the interest in retaining counsel of one's choice. *Id.* at 172. An attorney's conduct need not be governed by standards that can by [sic] imputed only to the most cynical members of the public. A lawyer need not 'yield to every imagined charge of conflict of interest, regardless of the merits, so long as there is a member of the public who [says that he] believes it.' *Woods v. Covington County Bank, supra*, 537 F.2d at 813.

Presumably, if Canon 9 and Ethical Consideration 9–2 have retroactive effect, this ethical consideration should likely be given prospective application. That is: Is there a showing of a reasonable possibility that some specifically identifiable impropriety could occur in the future?

The parties, however, have cited no Fifth Circuit authority and the court has found none dealing specifically with the lawyer/public official cast in the class action context. The closest factual situation to the instant dispute is Opinion 74–8 of the Professional Ethics Committee of The Florida Bar, and it is quoted verbatim for easy reference.[2]

**2.** Opinion 74–8
June 14, 1974
It is improper for a lawyer to represent a client in a suit against a hospital when a member of the lawyer's firm is also a member of the commission of the hospital district in which the defendant hospital is located.
Canon: 9, C.P.R.
C.P.R.: DR 5–105(D); EC 8–8, 9–2
Vice Chairman SULLIVAN stated the opinion of the Committee:
A member of The Florida Bar is a member of the Commission for a Hospital District. The Commissioners meet monthly to determine overall policy but do not participate in the day-to-day operation of any hospitals in the District. A Commissioner's duties and responsibilities are in some ways analogous to those of a member of the Board of Directors of a corporation.
A regular client of the Commissioner-attorney's firm intends to sue a hospital in the District for malpractice arising out of allegedly negligent treatment in the emergency room. The proposed lawsuit will not involve any acts or decisions of the Commission or of any Commissioner. The hospital has malpractice insurance which will fully cover any damages that may be recovered, and the insurance company will have complete control of the lawsuit. The Commission will make no decisions regarding the handling of the

Plaintiffs' counsel have earnestly sought to distinguish the factual circumstances of Opinion 74–8 from the case at bar. However, the similarity of the factual situation is, indeed, striking when one analogizes the insurance coverage involved in the Ethics Opinion with Article XV in the lease under consideration. Tallahassee Memorial Regional Medical Center, Inc., in the lease indemnifies the City for any liabilities, including this lawsuit. But like the insurance coverage in Opinion 74–8 the indemnification agreement is susceptible to disputed interpretations and potential inadequacies.

The lease gives Commissioner Spriggs important powers which will inevitably, through no fault of his, trigger suspicions of impropriety. Article XVI gives City Commissioners blanket power to examine the books and accounts of Tallahassee Memorial Regional Medical Center, Inc., and Article XI gives them the right to enter and inspect the premises. These powers give Mr. Spriggs access to much more information than discovery would provide. Though I assume he would not exercise that power, its existence creates a situation bound to be misunderstood by a lay person and to diminish public confidence in the legal profession's integrity.

■■■ As *Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir. 1976), compels me to do, I must ultimately weigh the social interests involved, including the litigants' right to freely chosen counsel, against the likelihood of public suspicion or obloquy which will arise by the lawyer/City Commissioner's continued representation of the purported class. Under the circumstances of this case the plaintiffs will continue to be represented by competent counsel of their choosing. If this were not so, a different result might be obtained when the weighing process suggested by *Woods, supra*, is undertaken.

A good public official, just like a good lawyer, should avoid even the appearance of conflict. So long as lawyer Spriggs represents employees that have been and may again be directly regulated by the Commission on which he sits there will be suspicion that either the employees are not getting proper legal representation or Tallahassee's citizens are not getting adequate legislative representation. Well founded suspicions of impropriety will also arise from lawyer Spriggs suing a party he can conceivably control and to whose records he has complete access. And, most immediately, extreme, unacceptable appearances of impropriety are inherent in the situation where lawyer Spriggs is opposed by an attorney on Commissioner Spriggs' payroll.

In my view and under the peculiar factual circumstances of this case, the disqualification of City Commissioner Kent Spriggs from further representation of the plaintiffs as lawyer Spriggs is clearly compelled.

---

litigation; there is no confidential information that could or would be made available to the law firm because one of its members is on the Commission.

Another member of the firm asks whether his partner's membership on the Commission presents a conflict of interest that will prevent his firm's representing the client in the malpractice action. We are of the opinion that a conflict of interest does exist and that such representation would be improper.

We note that questions could arise regarding the insurance coverage, including solvency of the insurer or a claim of non-cooperation, even though there is no question about coverage of the risk and policy limits. Even if those problems do not arise, the fact that the hospital has malpractice insurance does not necessarily isolate the Commissioners from any responsibility or involvement. Certainly, a substantial recovery by the plaintiff would raise the question of the hospital's insurance rates and result in publicity adversely affecting the hospital's reputation.

The attorney's Commissioner-partner could, then, have a direct interest arising from his responsibilities to the Hospital District as well as the obvious interest in his law firm's fee. The Commissioner should not represent the client in such an action, EC 8–8. Therefore, his partner should not. DR 5–105(D). The fact that the Commissioner's law firm is suing a hospital in the District over which the Commission has policy-making and supervisory responsibility will subject it to suspicion and criticism even though the firm handles the case with complete propriety, as we assume it would. We believe, then, that at a minimum the law firm's participation in the case would create an appearance of impropriety which precludes its accepting the representation. Canon 9, EC 9–2.

Consequently, I find and ultimately conclude that there is a reasonable possibility of the City Commission of the City of Tallahassee having direct control over the entity which he now is suing. I further conclude that the likelihood of public suspicion outweighs the social interests which will be served by his continued participation in this case. It is therefore

ORDERED AND ADJUDGED that the motion of the defendant, Tallahassee Memorial Hospital, for disqualification of Kent Spriggs and any member of his law firm from further participation in these cases is granted.